779 P.2d 15

**INLAND TITLE COMPANY, an Idaho Corporation, Plaintiff–Appellant,**

v.

**Calvin E. COMSTOCK, Mildred C. Comstock, Kenneth L. Smith, Gene W. Robinson, Don H. Hawkins, William W. Hunt, A.J. Achabal, Henry M. Hudson, Velma V. Morrison General Partners and Silver King, Limited, an Idaho Limited Partnership, Defendants–Respondents.**

No. 17430.

Supreme Court of Idaho.

April 26, 1989.

On Denial of Petition for Rehearing Sept. 7, 1989.

William H. Foster, Grangeville, for plaintiff-appellant.

Ringert, Clark, Harrington, Reid, Christenson & Kaufman, Boise, for defendants-respondents. Thomas C. Frost, argued.

HUNTLEY, Justice.

Inland Title Company brought suit in the magistrate division of the Second District Court to collect a rate manual fee for a commitment to insure real property owned by Silver King, Ltd. and its general partners. The magistrate found for Inland Title Company. The district court reversed on appeal. Inland Title Company now appeals, claiming that it is entitled to recover a rate manual fee of one-half the premium

for the title commitment it issued to Silver King.

The primary issue on appeal is whether Inland Title Company and Silver King, Ltd., had entered into a completed title insurance commitment contract thereby entitling Inland Title to recover a fee.

Prior to the instant transaction, during the summer of 1981, Ken Smith, acting on behalf of Silver King, ordered a title insurance policy from Inland Title Company on a certain tract of property Silver King was purchasing. The $225,000 policy carried a premium of $803.75.

On February 6, 1984, Smith telephoned Inland Title's office manager, Joseph Foster, regarding title insurance. Smith indicated that Silver King was negotiating a $6,000,000 sale of a tract of real property which included the property insured by Inland Title in 1981. At this point, the facts are in dispute. Smith testified that he knew nothing about title insurance and that he did not intend to request a title commitment; rather, he was merely attempting to get information as to the status of the title. Foster testified that Smith clearly requested a $6,000,000 title insurance commitment on the land Silver King was selling. Following Smith and Foster's telephone conversation, Inland Title sent Silver King a commitment for title insurance dated February 7, 1984. Included was an invoice for $12,337. The commitment contained: (1) An "agreement to issue policy"; (2) A Schedule "A" describing the parties, the commitment amount, the premium amount and the legal description of the property; and (3) A Schedule "B" listing seven standard and six transaction-specific exceptions. The commitment provided: "Life of a commitment is six months unless otherwise arranged." A further endorsement was sent to Silver King on February 16, 1984. Ken Smith gave the commitment and the endorsement to James Reid, the attorney for Silver King.

On May 16, 1984, Reid wrote a letter to Inland Title requesting it correct an exception listed on the preliminary title report of February 7, 1984. This exception was referred to as the "red fox lien." There was no written response to Reid's letter of May 16th. Nothing further transpired between the parties during the six month commitment period, Silver King neither returning the commitment documents nor paying the premium.

Silver King's prospective land sale was never completed. As a result, Inland Title's underwriter, First American Insurance Company, was never required to issue a title insurance policy to Silver King. Silver King never tendered payment of the fee for the title commitment. Inland Title filed suit against Silver King and its general partners for $6,168.50 as 50% of the title commitment fee of $12,337.[1] The magistrate judge ruled that Ken Smith, acting on behalf of Silver King, had entered into a binding contract with Inland Title Company. He also found that although the rate manual fee was not actually listed in the commitment, the fee was set by the State of Idaho and readily ascertainable. Judgment was entered for Inland Title. Silver King appealed to the district court which reversed the magistrate court. Inland Title now appeals.

I.

If the district court's reversal of the magistrate's opinion is to be sustained, the record must demonstrate that the magistrate's opinion was not supported by substantial and competent evidence or was infused with an error of law. Formation of a contract is generally a question of fact for the trier of fact to resolve. 44 Am.Jur.2d Insurance § 2032 p. 1030. Where there is substantial evidence to support a finding that a contract exists, the finding will not be disturbed on appeal, even though there is conflicting evidence. *First Realty and Investment Co., Inc. v. Rubert*, 100 Idaho 493, 504, 600 P.2d 1149 (1979). In reviewing a magistrate's findings, therefore, the district court should adhere to the well-recognized rule that findings based on substantial and competent, though conflicting,

---

1. *Title insurance rates are established by Idaho Department of Insurance regulations pursuant to statutory authority. (See infra § I. B. of this opinion (discussing I.C. § 41–2708 and Insur-* ance Regulation No. 25).) *The regulations establish a premium of $12,337 for a $6,000,000 policy and further provide for a reduction of 50% in the event of cancellation.*

evidence will not be set aside on appeal. *Hawkins v. Hawkins,* 99 Idaho 785, 789, 589 P.2d 532 (1978).

The determination of whether Inland Title and Silver King entered into an enforceable contract requires that we answer two inquiries. The first is whether there was a valid offer and acceptance, which in part is dependent upon the answer to the second inquiry, that being whether the terms regarding the fee for the premium were sufficiently definite or ascertainable as to provide a requisite meeting of the minds.

### A.

**The magistrate's finding of a mutual manifestation of intent to contract is supported by substantial and competent evidence.**

■ Formation of a valid contract requires that there be a meeting of the minds as evidenced by a manifestation of mutual intent to contract. This manifestation takes the form of an offer and acceptance. *See Pierson v. Sewell,* 97 Idaho 38, 539 P.2d 590 (1975); *Turner v. Mendenhall,* 95 Idaho 426, 510 P.2d 490 (1973). In a dispute over contract formation it is incumbent upon the plaintiff to prove a distinct and common understanding between the parties. *Johnson v. Albert,* 67 Idaho 44, 170 P.2d 403 (1946); *Lawyers Title Company of Idaho v. Jacobs,* 102 Idaho 804, 641 P.2d 350 (Ct.App.1982).

In the instant case, Joseph Foster of Inland Title testified that during the telephone conversation on February 6, 1984, Ken Smith of Silver King requested a title commitment for insurance in the amount of $6 million. Pursuant to the request, Inland Title did then mail the title commitment to Silver King and Silver King retained it without rejection for over six months. Mr. Foster's testimony constituted substantial and competent evidence to support the magistrate's finding that there was a valid offer and acceptance. Ken Smith made the offer on behalf of Silver King when he requested the title commitment. Joseph Foster accepted the offer on behalf of Inland Title when he researched the title and delivered the binding title commitment to Silver King. Therefore, the district court

was in error when it refound the facts and reversed the magistrate's ruling.

### B.

**The magistrate's finding that the price terms of the contract were sufficiently definite or ascertainable is supported by substantial and competent evidence.**

■ Agreement as to price or compensation is an essential element of every contract. In the case of a request for a title commitment there need not be express agreement, since there is an implied agreement to pay the usual premium. *Globe and Rutgers Fire Insurance Co. v. Liberty Bell Ins.,* 16 Cal.App.2d 76, 60 P.2d 200 (1936).

Although this contract did not specify what the fee was, it was readily ascertainable by reference to statute and regulation. *See* I.C. § 41–2708 and Insurance Regulation No. 25, which establish the premium rate as a matter of law. Thus, there was sufficient means for Ken Smith/Silver King to determine the price. When individuals buy title insurance they in effect agree to pay the established premium. *Globe and Rutgers Fire Ins. Co. v. Liberty Bell Ins.,* 60 P.2d at 202. Accordingly, the trial judge correctly found that the parties had entered into a valid enforceable contract. Inland Title accepted the offer by Silver King to purchase a commitment to issue a $6,000,000 dollar title policy, Inland Title accepted and provided the commitment and, thus, has earned its fee. That the sale was not completed, and the final title policy was never issued, does not excuse Silver King from payment for the commitment.

### II.

■ Finally, Inland Title cross-appeals claiming that the magistrate should have awarded $6,168.50 instead of the $5,801 which he actually awarded. The magistrate found that Inland Title:

is entitled to an amount which would represent one-half of its regular premium for an insurance policy in the amount of $5,580,000 (the policy face value re-

duced by the $420,000 amount of the unenforceable lien in favor of Red Fox Ltd.). The court finds that one-half of the regular premium would be $5,801. The court concludes that the plaintiff is entitled to receive that fee from the defendants, and each of them.

The magistrate's reduction of the fee was incorrect because the listing of an exception for the $420,000 lien (valid or invalid), does not detract from the fact that the face value of the commitment was $6,000,-000 not $5,580,000.

Reversed and remanded for entry of judgment consistent herewith. Costs to appellant. No attorney fees awarded.

BAKES and BISTLINE, JJ., concur.

JOHNSON, Justice, dissenting.

I dissent from the majority opinion reversing the decision of the district judge. I am persuaded that the district judge correctly analyzed the case on appeal from the magistrate. I would affirm the district judge's decision.

In his opinion, District Judge George Reinhardt stated:

After reviewing the testimony given at trial, this Court simply cannot find sufficient and competent evidence to support the proposition that Ken Smith held the present intent to bind [Silver King] to the purchase of the title insurance policy on February 6, 1984.

The testimony given by Mr. Smith indicates that Silver King, Ltd. was seeking an update on title information with the possibility of purchasing a six million dollar policy in the future....

. . . .

Inland Title bore the burden of proof, and the testimony given by Mr. Foster and Mr. Smith does not provide sufficient basis upon which to find a contract. [Citations omitted.] [Inland Title] failed to establish the existence of an express oral contract, and it was error for the trial Court to assume the existence of the contract.

. . . .

Even if this Court were to affirm the trial Court's finding of a contract to purchase a title insurance policy, the cancellation fee clause would be unenforceable. The cancellation fee clause found in the commitment issued by [Inland Title] would fail primarily due to the provision's lack of clarity. [Silver King] could not reasonably ascertain their obligation from the document. There is also a lack of proof in the record that the parties ever agreed to the fee.

. . . .

The notice given to [Silver King] of the cancellation fee was listed in Note 2 of the Commitment. "In the event the transaction fails to close and this commitment is cancelled, a fee will be charged to comply with the state insurance code."

. . . .

The law set forth in *Giacobbi Square* [*v. PEK Corporation*, 105 Idaho 346, 348, 670 P.2d 51, 53 (1983)] requires that the contract "contain provisions which are capable in themselves of being reduced to certainty." The cancellation clause in the commitment sent to [Silver King] is utterly lacking in the potentiality of being reduced to certainty. Rather, it places the onus upon [Silver King] to seek a collateral source of information if any attempt to determine the cancellation fee is warranted.

. . . .

Chapter 27 of title 41, I.C. Sec. 41-2701, et. al., are the statutory provisions regulating the Title Insurance Industry. However, information in this chapter as to the determination of a title insurance policy cancellation fee is non-existent. It is simply *impossible* to pursue I.C. Sec. 41-2701, et. al. and determine in this instance that [Silver King's] cancellation fee would be $6,168.50.

. . . .

Finally, it should be noted that no insurance ever issued, and hence, the title company assumed no risk as to the state of the title. The title company did a search and charged $6,168.50, which figure was based upon a potential buyer telling a potential seller that he was considering making a $6,000,000 offer. The facts are clear that [Silver King] simply wanted a title search because a potential

buyer said he wanted to know the state of the title and he might be willing to pay $6,000,000 for the property.

If we were to change the facts somewhat and suppose that the potential buyer told [Silver King] that he was looking at making an offer of $6,000, the title company would have done the same amount of work and would have assumed the same amount of risk. However, the title company in such a case would have charged [Silver King] approximately $100.00.

In my view, Inland Title received no consideration from Silver King and was not bound to insure title. They might have been entitled to recover in quantum meruit, but did not include a claim on that basis. I would affirm the district judge's decision.

SHEPARD, C.J., concurs.

### OPINION ON DENIAL OF PETITIONS FOR REHEARING

HUNTLEY, Justice.*

The petitions for rehearing of both parties are denied. However, two issues assigned by appellant in the appeal were not addressed in our initial opinion and we do so now.

#### I.

■ Inland Title asserts a right to attorney fees under Idaho Code § 12–120(3) which reads in part:

In any civil action to recover on an open account ... or contract relating to the purchase ... of ... services ... the prevailing party *shall* be allowed a reasonable attorney fee to be set by the court to be taxed and collected as costs. (Emphasis supplied.)

In *Torix v. Allred,* 100 Idaho 905, 911, 606 P.2d 1334 (1980) this Court stated:

The respondent's counterclaim was an action on an open account for sums Torix owed Burley Butte for feeding and caring for his cattle. As prevailing parties on that counterclaim the respondent was entitled to attorney fees as a matter of statutory right under I.C. § 12–120(2)

[now § 12–120(3)] and not merely in the court's discretion.

Accordingly, on remand the trial court will fix attorney fees both for the trial and appeal.

#### II.

 Secondly, Inland Title asserts that it is entitled to interest at 12% under I.C. § 28–22–104(6) for "Money due upon open accounts after three (3) months from the date of the last item." This transaction does not qualify as such an open account. Therefore, the trial court should not utilize I.C. § 28–22–104(6) for determining the date of commencement of the accrual of interest.

BAKES, C.J., and BISTLINE and JOHNSON, JJ., concur.

SHEPARD, J., sat but did not participate due to his untimely death.

---

* This opinion was prepared by Huntley, J., and voted on by the Court prior to his resignation