155 P.3d 691

Emin BAJREKTAREVIC and Mirsada Bajrektarevic, husband and wife, Plaintiffs–Appellants,

v.

LIGHTHOUSE HOME LOANS, INC., a foreign corporation, and Countrywide Home Loans, Inc. d/b/a America's Wholesale Lender, a foreign corporation, Defendants–Respondents.

No. 32324.

Supreme Court of Idaho, Boise, December 2006 Term.

Jan. 26, 2007.

Johnson & Monteleone, L.L.P., Boise, for appellants. Samuel Johnson argued.

Marcus, Christian & Hardee, Boise, for respondents. Trent B. Marcus argued.

JONES, Justice.

This case involves an alleged breach of a contract fixing the interest rate for a home loan. Appellants, Emin and Mirsada Bajrektarevic, sued Respondents, Lighthouse Home Loans, Inc. ("Lighthouse") and Countrywide Home Loans, Inc. ("Countrywide") (collectively "the defendants"), claiming the interest rate proffered at closing was higher than the agreed rate. On summary judgment, the

district court ruled in favor of the defendants, holding that no enforceable agreement existed. We vacate and remand.

## I.

In June 2003, the Bajrektarevics contacted Lighthouse, a mortgage broker, about refinancing their existing home loan in order to take advantage of falling interest rates. The Bajrektarevics met with Joseph Crowell, a Lighthouse senior mortgage banker, to discuss the refinance. They informed him that they were interested in a home loan with a fixed interest rate of 5.125% over a thirty-year term. Crowell recommended that Countrywide, a mortgage lender, underwrite the loan and the Bajrektarevics agreed to pursue a Countrywide loan.

In their initial application documents, the Bajrektarevics were advised by Crowell to specify a floating interest rate since interest rates were still going down and they might be able to obtain a rate less than 5.125%. He indicated they could lock in a 5.125%, or lesser, fixed rate when they had met all of the loan conditions. Toward the end of July, Crowell called Mr. Bajrektarevic to say that the loan conditions had been met and it was time to lock in the interest rate. Mr. Bajrektarevic requested the 5.125% fixed rate be locked and Crowell indicated he had locked it on his computer. Mr. Bajrektarevic states that the two signed a lock-in agreement setting the interest rate at 5.125%, fixed for a thirty-year term. The Countrywide documents were available for signing at closing a couple of days later. At the closing, Mr. Bajrektarevic noticed the interest rate was not in accordance with the lock-in agreement but was rather 5.375%, whereupon he and his wife refused to close the loan.

The Bajrektarevics filed suit for breach of contract, alleging that the defendants had violated the lock-in agreement and that they had been unable to find a comparable rate elsewhere. The defendants moved for summary judgment, asserting that there was no valid written agreement to make the loan and that the statute of frauds (Idaho Code § 9–505.5) thereby barred the claim. The district court agreed, granting the summary judgment. The Bajrektarevics filed a motion to reconsider, claiming that the district court failed to construe the facts in the record in a light most favorable to them, the non-moving party. The district court denied reconsideration. The Bajrektarevics now appeal.

## II.

When reviewing a summary judgment order, this Court applies the same standard as the district court. *Foster v. Traul*, 141 Idaho 890, 892, 120 P.3d 278, 280 (2005). Summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Idaho R. Civ. P. 56(c). This Court will construe all disputed facts liberally in favor of the non-moving party, and all reasonable inferences will be drawn in favor of the non-moving party. *Hayward v. Jack's Pharmacy Inc.*, 141 Idaho 622, 625, 115 P.3d 713, 716 (2005). If the facts are such that reasonable persons could reach differing results, summary judgment is improper. *Id.* "If there is no genuine issue of material fact, only a question of law remains, over which this Court exercises free review." *Infanger v. City of Salmon*, 137 Idaho 45, 47, 44 P.3d 1100, 1102 (2002).

## III.

The question presented for determination is whether the district court erred in holding in its summary judgment order that the lock-in agreement was not an enforceable contract. It should be noted that the lock-in agreement contained in the record is not the actual lock-in agreement that was allegedly prepared by Countrywide and signed by the parties. For the purposes of summary judgment we will assume the existence of a written lock-in agreement providing for a fixed interest rate of 5.125% over a thirty-year term because an affidavit of Mr. Bajrektarevic states that such an agreement was made and executed by both parties. Additionally, Crowell initially testified that he and the Bajrektarevics had both signed such a lock-in

agreement.[1]

■ The district court erred in holding that no genuine issue of material fact exists as to whether the lock-in agreement constituted an enforceable contract. A prerequisite to the valid formation of a contract is a meeting of the minds as evidenced by a manifestation of mutual intent to contract. *Inland Title Co. v. Comstock*, 116 Idaho 701, 703, 779 P.2d 15, 17 (1989). This manifestation takes the form of offer and acceptance. *Id.* Additionally, to be enforceable, an agreement must be "sufficiently definite and certain in its terms and requirements so that it can be determined what acts are to be performed and when performance is complete." *Dale's Service Co., Inc. v. Jones*, 96 Idaho 662, 664, 534 P.2d 1102, 1104 (1975).

The district court held that the lock-in agreement was not a legally enforceable contract because it states the Bajrektarevics are merely "applicants" for a loan and that it is not an approval of the loan or a loan commitment. The district court's factual observations are correct but that does not mean that the lock-in agreement could not be an enforceable contract. Characterizing the Bajrektarevics as applicants has little bearing on whether or not they were entering into a contract. This Court recently held that an individual who signed a purchase agreement as an "applicant" was contractually bound under the agreement. *J.R. Simplot Co. v. Bosen*, 2006 WL 3409103, —— Idaho ——, —— P.3d ——. And, while paragraph 7 of the lock-in agreement states it is not a loan approval or a loan commitment, bold language above the signature lines spells out, **"BY SIGNING BELOW, LENDER AND APPLICANT AGREE TO THE TERMS AND CONDITIONS OF THIS LOCK–IN AGREEMENT."** This would indicate that Countrywide, which apparently prepared the document, intended it to be a binding agreement with respect to the terms and conditions contained in the document.

Mr. Bajrektarevic stated that the lock-in agreement he and Crowell signed contained an interest rate of 5.125% that was fixed for a period of thirty years. Paragraph 19 of the document recites that, "The Applicant and the Lender agree to close the loan at the above specified interest rate and discount points upon loan approval within the term of this Agreement, regardless of any change in market rates." This would appear to be a firm agreement that the loan would close at the specified rate, if the parties did proceed to closing. This is substantiated by language above the signature lines specifying, "All terms not legally locked are subject to change." Thus, the interest rate was not subject to change, being legally locked.

The defendants argue the lock-in agreement is not enforceable because it is not a loan commitment and the closing of any loan is subject to a number of conditions. They rely on paragraph 7 of the document, which provides:

> This is not a loan approval or loan commitment. Any program described above may not be available for Applicant. The Lender will not close the loan unless, among other things, it approves the Applicant's loan application, including employment, income, assets, credit and property, and all conditions of such approval are satisfied prior to loan closing.

This language is broad and could certainly be construed to allow the lender to refuse to close the loan for a wide variety of reasons.

The defendants do not argue that the Bajrektarevics failed to satisfy any of the conditions listed in paragraph 7. To the contrary, Crowell testified that the Bajrektarevics satisfied all of the underwriting conditions required to receive the loan. Indeed, Countrywide prepared the loan documents, which were available for signature by the Bajrektarevics when they went to the scheduled closing. The fact that the defendants went all of the way to the closing indicates their intention to make the loan. Paragraph 19 of the

---

1. Crowell later recanted this testimony in an affidavit which incorporated a deposition change sheet making substantial changes to his deposition testimony. In that affidavit, Crowell disclaimed any knowledge of the lock-in agreement and stated that he never signed such a document.

However, because this is an appeal from a summary judgment, this Court will view the facts in a light most favorable to the Bajrektarevics and assume that the alleged lock-in agreement existed and was signed by the parties.

lock-in agreement indicates that the loan would be approved *before* closing. The inference to be drawn from this is that Countrywide had approved the loan before the documents were made available for signature by the Bajrektarevics at closing. The only thing that stopped the loan from closing is that the main purpose of the lock-in agreement—to establish the interest rate as a "legally locked" term—had been changed from the agreed 5.125% to 5.375%.

The defendants argue that the lock-in agreement does not satisfy the statute of frauds because it contains an explicit disclaimer that it is not a commitment to lend. I.C. § 9–505.5 requires a commitment to lend money in the principal amount of $50,000 or more to be in writing and subscribed by the party charged, or by his agent. We agree that the lock-in agreement does not constitute a commitment to lend. However, that is not the question before us. The question is whether the lock-in agreement is an enforceable contract. Countrywide was going to make the loan, as shown by the fact that it was prepared to close when the Bajrektarevics went to closing, so there is really no question of the Bajrektarevics attempting to enforce a commitment to lend. What the Bajrektarevics are trying to do is to seek redress for the one item that was specifically agreed upon by the parties and not subject to change, i.e. getting the 5.125% interest rate, fixed for a period of thirty years. There is certainly enough evidence in the record to preclude summary judgment on the question of whether defendants breached the lock-in agreement by failing to provide the agreed upon interest terms. Thus, we vacate the summary judgment order.

## IV.

■ The Bajrektarevics seek attorney fees under Idaho Code § 12–120(3), which provides for an award of reasonable attorney fees to the prevailing party in any commercial transaction. Commercial transaction has been defined as "all transactions except transactions for personal or household purposes." I.C. § 12–120(3). The transaction involved in this case—the refinancing of the Bajrektarevics' home loan—was clearly made "for personal or household purposes," and does not constitute a commercial transaction as contemplated by Idaho Code § 12–120(3). Therefore, the Bajrektarevics' request for attorney fees is denied. The Bajrektarevics are entitled to costs under Idaho Appellate Rule 40.

## V.

The district court's grant of summary judgment in favor of the defendants is vacated and the case is remanded to that court for further proceedings consistent with this opinion. Neither party is awarded attorney fees on appeal. The Bajrektarevics are entitled to costs on appeal.

Chief Justice SCHROEDER, and Justices TROUT and BURDICK concur.

Justice EISMANN, dissenting.

The majority holds that the defendants can be liable for failing to make a loan they had no legal obligation to make. Because there is no logical basis for that holding, I respectfully dissent.

It is undisputed that the Defendants did not have any legal obligation to make a loan to the Plaintiff. Idaho Code § 9–505(5), the statute of frauds, provides that a "promise or commitment to lend money or to grant or extend credit in an original principal amount of fifty thousand dollars ($50,000) or more, made by a person or entity engaged in the business of lending money or extending credit," is invalid "unless the same or some note or memorandum thereof, be in writing and subscribed by the party charged, or by his agent." There was no note or memorandum signed by either of the Defendants in which it made a promise or commitment to lend any money to the Plaintiff. The only signed document was the lock-in agreement, and it clearly stated, "This is not a loan approval or loan commitment." The majority agrees that "the lock-in agreement does not constitute a commitment to lend."

Regardless of whether the Defendants were at one time willing to make the loan, or even had approved the loan and had prepared the necessary documents to close the transaction, they never signed any document

promising or committing to lend money to the Plaintiff. Likewise, they never made a loan to the Plaintiff. They only agreed that if they made a loan it would be at a 5.125% interest rate. As a result, the statute of frauds rendered any alleged agreement to lend money invalid and unenforceable. *Lettunich v. Key Bank Nat'l Ass'n*, 141 Idaho 362, 109 P.3d 1104 (2005). Even though the Plaintiff could not enforce any agreement by the Defendants to lend him money, and even though the Defendants never made a loan to the Plaintiff, the majority holds that the Defendants can be required to pay damages for failing to lend the Plaintiff money at a 5.125% interest rate. That analysis is simply devoid of logic.