# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 49801

JENNIFER PICKERING and CHRIS PICKERING,

    Plaintiffs-Counterdefendants-Respondents,

v.

MELISSA NICOLE SANCHEZ, and all occupants, tenants, or subtenants of the property commonly known as #6 Sixth St., Middleton, ID 83644,

    Defendant-Counterclaimant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, November 2023 Term

Opinion Filed: February 22, 2024

Melanie Gagnepain, Clerk

---

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County. Thomas Whitney, District Judge.

The judgment of the district court is <u>affirmed</u>.

John L. Gannon, Attorney at Law, Boise, for Appellant. John L. Gannon argued.

Chaney Law Office, PLLC, Caldwell, for Respondents. Gregory D. Chaney argued.

---

BRODY, Justice.

This case arises from the dismissal of a tenant's Idaho Consumer Protection Act ("ICPA") counterclaim against her landlords and the district court's decisions concerning certain setoffs against property damages awarded to landlords. Melissa Sanchez ("Sanchez") and Chris and Jennifer Pickering ("the Pickerings") entered into an agreement concerning the lease and ownership of a mobile home owned by the Pickerings. For reasons that are disputed, Sanchez believed that the lease agreement was a "lease to own" contract, while the Pickerings believed that the agreement was a "lease with purchase option" contract. Sanchez paid the Pickerings a $10,000 down payment after both parties signed the agreement. Relations between the parties eventually soured, and the Pickerings initiated an eviction action due to Sanchez's alleged violations of the

1

agreement. In response, Sanchez attempted to exercise the option to purchase the residence and subsequently caused extensive damage to the residence when she was forced to leave.

The Pickerings filed suit against Sanchez for waste, alleging that she committed $40,000 in damages to the interior of the residence and that they were entitled to treble damages. Sanchez counterclaimed, alleging, among other things, violation of the ICPA, breach of contract, unjust enrichment, and retaliatory eviction. Following a bench trial, the district court held that Sanchez was liable for the damages to the residence and awarded treble damages. In addressing Sanchez's counterclaims, the district court further determined that (1) there was no deception on the part of the Pickerings to sustain Sanchez's ICPA claim, (2) the agreement was unenforceable because the parties did not have a meeting of the minds, and (3) the Pickerings were unjustly enriched by the $10,000 down payment and offset the Pickerings' damages award by this amount. The remaining claims were dismissed. Sanchez timely appealed. For the reasons set forth below, we affirm the judgment of the district court.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background

In 2009, Chris and Jennifer Pickering purchased a 0.14-acre lot with a 1975 trailer home in Canyon County, Idaho. In 2018, the Pickerings sold the residence for $100,000, with a $20,000 down payment and $80,000 owner-financed payments processed through an escrow company. However, the purchaser died in February 2019, leaving a principal balance on the residence of approximately $77,000. To regain clear title to the residence, the Pickerings filed as a creditor in the probate of the purchaser's estate. They subsequently took possession of the residence in June of 2019 and regained clear title after the probate court granted the Pickerings' request to have the property reconveyed to them on September 26, 2019.

In May of 2019, the Pickerings posted a "For Sale" sign on the residence. Sanchez saw the sign and subsequently toured the property with a friend. Following the tour, Chris Pickering discussed the purchase price with Sanchez and offered to hold the property for $1,000 if she was interested in purchasing. Sanchez gave the Pickerings $1,000. Sanchez claims the Pickerings told her that they would "talk to the bank about the paperwork necessary to transfer the property to her." Sanchez testified that she later called Chris Pickering and asked if he would consider a lease to own agreement. Sanchez testified that she intended to use the residence as a daycare and as her home.

2

Several weeks later, the parties signed a document entitled "Idaho Lease to Own Agreement" with the subtitle "(Lease Agreement with Purchase Option)" immediately below it. Sanchez paid the Pickerings a $10,000 down payment. This agreement was a "form document" Jennifer found online and modified. The first section of the agreement entitled "Rent" provided that "Tenant shall pay Landlord the annual rent of Nine Hundred Dollars ($900.00) during said term, in monthly payments of Nine Hundred Dollars ($900.00). . . ." Sections 4 and 5 provided:

> **4. OPTION TERM**. The option terms:
> 05/18/2019 $5,000.00 paid, $5,000.00 due in August 2019.

> **5. NOTICE REQUIRED TO EXERCISE OPTION.** To exercise the Option to Purchase, the Buyer/Tenant must deliver to the Seller/Landlord written notice of Buyer/Tenant's intent to purchase. In addition, the written notice must specify a valid closing date. The closing date must occur before the original expiration date of the Lease Agreement, or the date of the expiration of the Option to Purchase Agreement designated in paragraph 1, whichever occurs later.

(Emphasis in original.) The agreement did not provide an expiration date for the option to purchase the property. The agreement prohibited assignment, subletting, and pets, and further required the "Tenant" to "comply with all building, zoning and health codes and other applicable laws for the use of said premises."

The parties disagreed as to the nature of the agreement. The Pickerings testified that the agreement was a "lease agreement with an option to purchase" the residence for $85,000 with monthly rent set at $900. Sanchez testified that the agreement was a "lease to purchase agreement," with the $10,000 down payment and the $900 monthly payments credited towards the purchase price. The district court found that "all parties [were] credible on the issues surrounding the negotiations leading up to the signing of" the agreement and "their interactions regarding that."

Sanchez moved into the residence around June 2019, and began making monthly rent payments. At some time during the spring of 2020, Chris Pickering went to Sanchez's trailer for a haircut. Sanchez testified that she told Chris Pickering at the time that she was "going to come into some money, and [she] would love to put it towards the house." However, Chris Pickering told Sanchez that the option to purchase the property had expired.

During her occupancy Sanchez posted a picture on social media depicting marijuana inside the residence and a picture of drug paraphernalia near the garage. She also posted a message which stated: "Next week ima [sic] eat mushrooms that . . . have been in my freezer since last festival

3

season." The Pickerings also testified that Sanchez abandoned the residence for several weeks and sublet the residence to individuals who were using drugs on the property.

On August 21, 2020, the Pickerings posted a "Three-Day Notice to Vacate" on the door of the residence. The notice stated that Sanchez was being evicted due to "illegal activities," abandoning the residence, and subleasing the residence in violation of the agreement. Five days later, on August 26, 2020, Sanchez sent a letter to the Pickerings declaring her intent to exercise the purchase option.

The Pickerings subsequently filed a complaint for eviction, and the magistrate court entered a default judgment against Sanchez, who vacated the property. However, before she vacated the property, Sanchez intentionally caused extreme damage to the residence. Some examples cited by the district court included: (1) putting raw chicken meat, peanuts, animal bones, and other substances in the register vents throughout the residence in an effort to leave a stench and make the property uninhabitable; (2) etching "pentagram star symbols" into the paneling throughout the home; (3) writing "bizarre and horrible, unspeakable things" to the Pickerings in permanent marker on the back door; (4) spray painting inside the microwave; and (4) removing drawers, blinds, the ice maker in the refrigerator, racks from the oven, and the knobs which operate the stove top. She also left large quantities of trash and other items throughout the residence. After Sanchez moved out, the Pickerings contacted their insurance company to file a claim for the damages to the residence.

## B. Procedural Background

The Pickerings filed suit against Sanchez for waste and sought treble damages pursuant to Idaho Code section 6-201. Sanchez counterclaimed, alleging violation of the ICPA, breach of fiduciary duty, breach of contract, unjust enrichment, and retaliatory eviction. For her ICPA claim, Sanchez requested specific performance requiring the sale of the residence, and if that was not available, then "actual damages of $10,000 down payment, $1200 for carpet [sic], equity payments for 16 months in the amount of $900 per month or $14,400, emotional distress, moving expenses, and a business loss of about $1800 per month for three months or $5400."

Following a bench trial, the district court determined Sanchez committed waste and awarded the Pickerings damages in the amount of $19,262.25. The district court also determined the Pickerings were unjustly enriched by retaining Sanchez's $10,000 downpayment for the

4

property and ordered an offset against the damages. The district court denied Sanchez's ICPA claim because it found that the Pickerings had not engaged in any deceptive act, stating:

> There was nothing here by the plaintiffs that actually represented engaging in any act or practice that is otherwise misleading, false, or deceptive. The plaintiffs simply didn't deceive the defendant in any way. There was a fundamental miscommunication here, a fundamental misunderstanding, but there was no intention to deceive. There was no actual deception. That act -- no part of it has been met in this case in the sense that the Consumer Protection Act would enable Ms. Sanchez to recover against the Pickerings, and so that claim cannot stand here.

The district court further determined that: (1) there was not a meeting of the minds on the material terms of the lease agreement, rendering it unenforceable; (2) Sanchez was not entitled to specific performance in the absence of an enforceable contract; (3) Sanchez was evicted because she used drugs and was an undesirable tenant; (4) Sanchez's $900 monthly payments were rent payments; and (5) Sanchez was not entitled to compensation for the appreciation in the value of the residence during the time she lived there. The district court denied Sanchez's remaining counterclaims on these bases. The district court also found that Sanchez had the "uncleanest of unclean hands[,]" which "could form the basis to deny" Sanchez any equitable relief. However, the district court noted that this finding did not "have any impact on the outcome because the court ha[d] already made findings and conclusions" on the relevant issues. Sanchez timely appealed.

## II. STANDARDS OF REVIEW

"This Court's review of a trial court's conclusions following a bench trial is limited to determining whether the evidence supports the findings of fact and whether the findings of fact support the conclusions of law." *Gestner v. Divine*, 171 Idaho 159, 166, 519 P.3d 439, 446 (2022) (quoting *Burns Concrete, Inc. v. Teton Cnty.*, 168 Idaho 442, 451, 483 P.3d 985, 994 (2020)). "A trial court's factual findings are reviewed for clear error and will not be disturbed if the findings are supported by substantial and competent evidence, even if there is conflicting evidence." *Gestner*, 171 Idaho at 166, 519 P.3d at 446 (internal quotation marks and citation omitted). Likewise, "[t]he findings of the trial court on the question of damages will not be set aside when based on substantial and competent evidence." *Trilogy Network Sys., Inc. v. Johnson*, 144 Idaho 844, 846, 172 P.3d 1119, 1121 (2007). "Substantial evidence is that which a reasonable trier of fact would accept and rely upon it in determining findings of fact." *Gestner*, 171 Idaho at 166, 519 P.3d at 446 (quoting *Capstar Radio Operating Co. v. Lawrence*, 160 Idaho 452, 459, 375 P.3d

5

282, 289 (2016)). This Court reviews questions of law de novo. *Siercke v. Siercke*, 167 Idaho 709, 713, 476 P.3d 376, 380 (2020) (citation omitted).

### III.    ANALYSIS

On appeal, Sanchez does not challenge the district court's holdings concerning her liability for the damages to the residence. Nor does she challenge the district court's holding that the agreement was unenforceable. Instead, Sanchez contends that (1) the district court erred by concluding that the Pickerings did not engage in a deceptive act under the ICPA, (2) the Pickerings' award of damages should have been reduced to reflect a property damage payment from the Pickerings' insurance company, and (3) the district court's unjust enrichment award should have been higher to reflect the increase in value of the residence while Sanchez lived there. Each argument is addressed in turn.

As an initial matter, the Court must address two motions to augment the record that were filed during the pendency of Sanchez's appeal. Shortly before oral argument, the Pickerings moved to augment the appellate record to include Sanchez's motion and supporting memorandum to exclude testimony from the Pickerings' insurance adjuster. In response, shortly after oral argument, Sanchez also moved to augment the appellate record to clarify the proceedings with respect to the insurance adjuster.  Idaho Appellate Rule 30(a) provides in part that, "[a]t any time before the issuance of an opinion, any party may move the Supreme Court to augment or delete from the settled reporter's transcript or clerk's or agency's record." Upon consideration, we grant both motions to augment the appellate record.

### A.  The district court committed no error in concluding that the Pickerings did not engage in a deceptive act under the Idaho Consumer Protection Act.

Sanchez brought a counterclaim against the Pickerings for violation of the Idaho Consumer Protection Act. She contends that the Pickerings engaged in deceptive conduct by (1) making representations that Chris Pickering would go to the bank for an escrow and get the agreement "right" and failing to do so, (2) failing to include in the agreement a date on which the option to purchase had to be exercised and misrepresenting the law on the duration of an option, and (3) failing to disclose that the Pickerings did not have title to the residence at the time they entered into the agreement. Sanchez argues that the district court erred in concluding that even if the ICPA applied in this case the Pickerings did not engage in a deceptive act. Sanchez argues that the district court's determination was in error because, contrary to the district court's ruling, the ICPA does

6

not require that there be intent to deceive. We affirm the decision of the district court because Sanchez misapprehends the district court's ruling and there is substantial and competent evidence in the record supporting the district court's decision.

The ICPA "prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce within the State of Idaho." *Litster Frost Inj. Laws., PLLC v. Idaho Inj. L. Grp., PLLC*, 171 Idaho 1, 6, 518 P.3d 1, 11 (2022) (quoting *State ex rel. Kidwell v. Master Distrib., Inc.*, 101 Idaho 447, 453, 615 P.2d 116, 122 (1980)). "Acts or practices declared unlawful by the ICPA include '[e]ngaging in any act or practice which is otherwise misleading, false, or deceptive to the consumer.' " *Tricore Invs., LLC v. Est. of Warren through Warren*, 168 Idaho 596, 618, 485 P.3d 92, 114 (2021) (alteration in original) (quoting I.C. § 48-603(17)). Under section 48-608(1), "a consumer must prove three elements to establish a claim: (1) the consumer purchased goods or services from a seller; (2) the seller engaged in unfair or deceptive act(s) or practice(s) that are declared unlawful under the ICPA; and (3) the unfair act(s) or practice(s) caused the consumer to suffer an 'ascertainable loss of money or property' (real or personal)." *Litster Frost Inj. Laws., PLLC*, 171 Idaho at 6, 518 P.3d at 11 (quoting I.C. § 48-608(1)). The ICPA requires that the offending party must be a person who "knows, or in the exercise of due care should know, that he has in the past, or is" committing an act or practice declared unlawful by Idaho Code section 48-603. I.C. § 48-603. " 'Goods' mean *any property*, tangible or intangible, *real*, personal or mixed, and any other article, commodity, or thing of value wherever situate, including certificates or coupons exchangeable for such goods." I.C. § 48-602(6) (emphasis added).

Before addressing the merits of Sanchez's claim, we turn to the Pickerings' argument that the claim fails because Sanchez has not challenged the district court's determination that the parties' agreement was unenforceable because there was no meeting of the minds. This Court held in *Taylor v. McNichols*, that "[i]n order to have standing under the Idaho Consumer Protection Act . . . , the aggrieved party must have been in a contractual relationship with the party alleged to have acted unfairly or deceptively." 149 Idaho 826, 846, 243 P.3d 642, 662 (2010) (first citing I.C. § 48-608(1); and then citing *Haskin v Glass*, 102 Idaho 785, 788, 640 P.2d 1186, 1189 (Ct. App. 1982)). While Sanchez recognizes these authorities require "some kind of legal arrangement" between the parties, she contends that the legal arrangement does not necessarily have to be a "valid" or "successful one." We note that since *Taylor* was decided, federal district courts have

7

questioned the breadth of its holding. *See, e.g.*, *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prod. Liab. Litig.*, 295 F. Supp. 3d 927, 1021–22 (N.D. Cal. 2018). However, we need not resolve the questions raised by Sanchez or the *Chrysler-Dodge* decision here because we conclude that substantial and competent evidence supports the district court's conclusion that the Pickerings did not engage in a deceptive act.

Sanchez's primary argument is that the district court erred in concluding that the Pickerings did not engage in a deceptive act because "intent" to deceive is not required to conclude that an act was deceptive under the ICPA. Sanchez misapprehends the district court's ruling. In issuing its oral ruling, the district court explained:

> Now, looking at the Consumer Protection Act claim, what -- if assuming for the sake of argument that [the] claim is valid here, that it applies, the act was not violated. There was nothing here by the plaintiffs that actually represented engaging in any act or practice that is otherwise misleading, false, or deceptive. The plaintiffs simply didn't deceive the defendant in any way. There was a fundamental miscommunication here, a fundamental misunderstanding, but there was no intention to deceive. There was no actual deception. That act -- no part of it has been met in this case in the sense that the Consumer Protection Act would enable Ms. Sanchez to recover against the Pickerings, and so that claim cannot stand here.

Sanchez focuses on the district court's statement that "there was no intention to deceive," and contends that the district court erred because the intention to deceive is not required under the ICPA. We agree that "[p]roof of intention to deceive is not required for finding that an act is unfair or deceptive." *Tricore Invs., LLC*, 168 Idaho at 617–18, 485 P.3d at 113–14 (quoting *Duspiva v. Fillmore*, 154 Idaho 27, 32, 293 P.3d 651, 656 (2013)). However, we do not read the district court's extraneous finding that there was *no intent to deceive* as the basis of its broader legal conclusion that there was *no deception* for purposes of invoking the ICPA. Instead, in viewing the district court's ruling as a whole, the district court was clearly emphasizing its determination that no deception occurred to sustain Sanchez's ICPA claim.

Next, Sanchez cites to the district court's finding that the parties were "credible on the issues surrounding the negotiations leading up to the signing of the so-called agreement and their interactions regarding that[,]" then highlights three sections of testimony to establish that the Pickerings deceived her. Sanchez's arguments essentially ask us to reweigh the evidence presented. "We reaffirm the oft-cited maxim that appellate courts in Idaho do not reweigh evidence." *Wilson v. Mocabee*, 167 Idaho 59, 68, 467 P.3d 423, 432 (2020). "Instead, we defer to the trial court's unique ability to 'accurately weigh the evidence and judge the demeanor of the

8

witnesses' while taking into account the trial court's 'superior view of the entire situation.'" *Id.* (quoting *Lunneborg v. My Fun Life*, 163 Idaho 856, 866, 421 P.3d 187, 197 (2018)).

First, Sanchez contends that statements made by Chris Pickering about going to the bank for an escrow were deceptive because he never followed through on these statements. To support this contention, Sanchez cites to her trial testimony that Chris Pickering said he would "take it to the bank" during the signing of the agreement:

> [Chris Pickering] was going to take to it the bank, and he was going to get it -- he was going to get all the quirks worked out, and it to be like professional. He was going to take it to the bank, and he was going to get it all worked up at the bank by the bank.

Chris Pickering's representations that he would go to the bank are subject to conflicting inferences based on the context in which the statements were made. At trial, Mr. Pickering testified that "[t]he terms of the contract was [Sanchez] was leasing the property with the option to purchase *if she could obtain her own funding and financing*." (Emphasis added.) No evidence suggests that Sanchez obtained financing for the property when the lease was signed or prior to her eviction. Because the trial court found that (1) the parties were credible in their interactions leading to the signing of the agreement, and (2) there was no meeting of the minds on the material terms of the lease agreement, a reasonable trier of fact could conclude that this statement was made in the context that Sanchez obtained financing to exercise her option. In that instance, Chris Pickering would not have been required to go to the bank to help set up an escrow because Sanchez did not exercise the option to purchase the property.

Next, Sanchez contends that the Pickerings' statements concerning an expiration date to exercise the option to purchase the property were deceptive. The Pickerings contend that (1) the testimony and confusion surrounding the timeline for execution of the option was miscommunication, not deception; and (2) the statements did not prevent Sanchez from exercising the option to purchase the property. The evidence supports the district court's determination that the statements regarding the expiration date were not deceptive.

To sustain her ICPA claim, Sanchez needed to demonstrate that the Pickerings knew, or in the exercise of due care should have known, that these statements concerning the timeframe to exercise the option were "otherwise misleading, false, or deceptive to the consumer." *Tricore Invs., LLC*, at 618, 485 P.3d at 114 (quoting I.C. § 48-603(17)). While the Pickerings may have believed that contracts in Idaho were only valid for one year, the question of whether the Pickerings "in the

9

exercise of due care should have known" that these statements were false is a factual determination committed to the trial court. The trial court here did not find that the Pickering should have known that these statements were false, but instead found that there was "a fundamental misunderstanding[.]" This finding is supported by Jennifer Pickering's testimony concerning her belief that contracts in Idaho remained valid for only one year.

Lastly, Sanchez contends that the Pickerings' failure to disclose that they did not have exclusive title to the property when the lease agreement was executed was deceptive. Sanchez alleges that "[t]he fact that [the Pickerings] never told the estate court, put the $10,000 in his personal account, and never provided an accounting to the estate *creates an inference that they knew they were not acting honestly* and that the failure to discuss this with Appellant was wrong." (Emphasis added.) The district court, as the finder of fact, properly exercised its discretion in rejecting this purported inference and Sanchez failed to establish that the district court's contrary finding—that the Pickerings were not deceptive—was clear error. Even so, Sanchez would not be able to establish that the nondisclosure caused her any ascertainable loss because Sanchez did not attempt to exercise her option to purchase the property prior to the Pickerings regaining exclusive title.

In this case, the parties provided testimony concerning their conflicting views of the agreement they entered. The district court heard the parties' testimony, weighed the evidence, and determined that "[t]here was a fundamental miscommunication here, a fundamental misunderstanding" and not deception. "[C]lear error will not be deemed to exist if the findings are supported by substantial and competent, *though conflicting*, evidence." *Caldwell Land & Cattle, LLC v. Johnson Thermal Sys., Inc.*, 165 Idaho 787, 795, 452 P.3d 809, 817 (2019) (quoting *Mortensen v. Berian*, 163 Idaho 47, 50, 408 P.3d 45, 48 (2017) (emphasis added)). "[I]f there is evidence in the record that a reasonable trier of fact could accept and rely upon in making the factual finding challenged on appeal[,]" then there is substantial and competent evidence. *Caldwell Land & Cattle, LLC.*, 165 Idaho at 795, 452 P.3d at 817 (citation omitted). While we acknowledge that there may be conflicting evidence on this matter, there is substantial and competent evidence in the record to support the district court's findings that the Pickerings' statements were not deceptive. We decline to second guess the district court's factual findings and defer to the trial court's unique ability to make these determinations.

10

Therefore, we conclude there is substantial and competent evidence to support the district court's finding that the Pickerings did not engage in a deceptive act.

### B. The record does not support Sanchez's claim that the judgment should be reduced by $7,924 under Idaho's collateral source rule.

Sanchez contends that the district court's award of damages on the waste claim should have been reduced by $7,924 under the collateral source rule because the Pickerings received a payment from their insurance company to compensate them for the damages Sanchez caused to the residence. Sanchez raised the collateral source setoff in her post-trial memorandum. She took the position that "the" insurance payment should be credited against any damages awarded, but never argued for any specific amount and never filed a motion. She also contended that the insurance company failed to cooperate with the parties by refusing to produce the policy without a subpoena and that "this refusal has consequences." She intimated that the consequence here could be a waiver of the right of subrogation. She continued, "[t]he important result here, is that if subrogation has been waived, the [Pickerings] might get a double recovery. Even a credit against any amount due to the Defendants would be a double recovery." She also stated that she "strenuously object[s] if [the Pickerings] show up now with a copy of the policy."

The district court did not address the collateral source setoff when it issued its April 15, 2022, bench ruling or when it entered judgment consistent with its oral ruling on April 29, 2022. Three days later, on May 2, 2022, Sanchez filed a motion requesting that the district court enter findings of fact and conclusions of law regarding the "insurance issue and the collateral source rule as well as spoilation . . . ." Sanchez did not cite any Rule of Civil Procedure in support of her request. The court minutes, which were added to the appellate record by Sanchez's motion to augment, indicate that the district court called this matter on for hearing on June 29, 2022. The minutes further indicate that neither Sanchez nor her counsel were present for this hearing; the Pickerings presented argument in opposition to Sanchez's motion; and the district court entered its findings and conclusions on the record denying the motion. These minutes state:

> The [district court] expressed its opinion, stated its findings of fact and conclusions of law for the record, and denied the motion under Rule 52 (b) and Rule 11.2 (b)(1). Additionally, the [district court] granted the motion under Rule 59 (e) and stated it would file an Amended Judgment, noting that the amended judgment would not change the substantive relief but would clarify what had been dismissed.

Idaho Rule of Civil Procedure 11.2(b) permits a party to seek reconsideration of a trial court's order "'entered before final judgment,' I.R.C.P. 11.2, while motions to address a trial court's

findings of fact and conclusions of law should be the subject of an Idaho Rule of Civil Procedure 52(b) motion[.]" *Turcott v. Est. of Bates*, 165 Idaho 183, 188, 443 P.3d 197, 202 (2019); *see also* I.R.C.P 52(b) ("On a party's motion filed no later than 14 days after the entry of judgment, the court may amend its findings, or make additional findings, and may amend the judgment accordingly."). The augmented record, however, does not contain the district court's findings of fact or conclusions of law concerning its analysis of Sanchez's motion under either of these rules, and Sanchez did not seek to include the hearing transcript in her motion to augment the record.

We have explained that an appeal is a formalized analysis of alleged legal error. *Est. of Ekic v. Geico Indem. Co.*, 163 Idaho 895, 897, 422 P.3d 1101, 1103 (2018). In order for this Court to determine whether legal error has occurred, we must have an adequate record on appeal, and the appellant bears the burden of providing that record:

> For this Court to properly perform its function, we require a clear record of any alleged error before the trial court. Appellants have a particular duty to provide this record: "The party appealing a decision of the [trial] court bears the burden of ensuring that this Court is provided a sufficient record for review of the [trial] court's decision." *Gibson v. Ada Cty.*, 138 Idaho 787, 790, 69 P.3d 1048, 1051 (2003). In fact, if the Appellant fails to comply with this duty, "this Court will presume that the absent portion supports the findings of the [trial] court." *Id.* "We will not presume error from a 'silent record or from the lack of a record.' " *Id.* (quoting *Brooks v. Brooks*, 119 Idaho 275, 280, 805 P.2d 481, 486 (Ct. App. 1990)).

*Id.* at 897–98, 422 P.3d at 1103–04 (alterations in original). In a case addressing an interest setoff issue, we explained how an inadequate record impaired our ability to review the district court's decision:

> All that aside, the record is devoid of any evidence that shows the trial judge abused his discretion by not offsetting the interest that could have been earned. Without the motions, supporting documents and transcript, it is difficult to tell if the district court determined that there was no offset because there was no actual interest to offset or if this was even argued. "It is the responsibility of the appellant to provide a sufficient record to substantiate his or her claims on appeal. In the absence of an adequate record on appeal to support the appellant's claims, we will not presume error." *State v. Murphy*, 133 Idaho 489, 491, 988 P.2d 715, 717, (Ct.App.1999); *Farmers Nat. Bank v. Shirey*, 126 Idaho 63, 71–72, 878 P.2d 762, 770–71 (1994).

*Belk v. Martin*, 136 Idaho 652, 660, 39 P.3d 592, 600 (2001).

The limited record and the procedural posture of this case impair our ability to review the district court's decision. As previously noted, Sanchez filed a barebones motion for additional

findings with no citation to any Idaho Rule of Civil Procedure or other authority. The entirety of the motion reads as follows:

> COMES NOW the Defendant by and through her attorney who requests that the Court enter findings and conclusions of law regarding the insurance issue and the collateral source rule as well as spoilation, and a finding regarding the value of the property in September 2020.
>
> This motion is based upon the record and file in this case and the memorandums previously submitted.

With no legal citations and without a transcript listing the district court's findings and conclusions, we have no way of knowing the district court's basis for denying Sanchez's motion under Idaho Rules of Civil Procedure 52(b) and 11.2(b)(1). Was it a lack of specificity in the motion? A lack of evidence in the record? When we cannot engage in meaningful review because there is not an adequate record, we will not presume error on the part of the district court.

Accordingly, we reject Sanchez's challenge to the district court's judgment.

### C. The district court did not err in its unjust enrichment award.

The district court awarded Sanchez $10,000 in unjust enrichment damages to compensate her for the downpayment she made on the residence. On appeal, Sanchez contends that the district court should have awarded additional unjust enrichment damages to compensate for the increase in the value of the property while she lived there and the monthly rental payments made during her tenancy.

"[U]njust enrichment is the measure of recovery under a contract implied-in-law, which 'is not a contract at all, but an obligation imposed by law for the purpose of bringing about justice and equity without reference to the intent of the agreement of the parties, and, in some cases, in spite of an agreement between the parties.' " *Turcott*, 165 Idaho at 190, 443 P.3d at 204 (emphasis omitted) (quoting *Barry v. Pac. W. Const., Inc.*, 140 Idaho 827, 834, 103 P.3d 440, 447 (2004)). "The measure of damages under a theory of unjust enrichment is not the actual amount of the enrichment, but the amount of enrichment which, as between the two parties it would be unjust for one party to retain." *Id.* (internal quotation marks and citation omitted).

"Unjust enrichment occurs where (1) the plaintiff confers a benefit on the defendant; (2) the defendant appreciates the benefit; and (3) the defendant's acceptance of the benefit is inequitable without payment to the plaintiff for the benefit's value." *Wadsworth Reese, PLLC v. Siddoway & Co., PC,* 165 Idaho 364, 372, 445 P.3d 1090, 1098 (2019) (citing *Countrywide Home*

13

*Loans, Inc. v. Sheets*, 160 Idaho 268, 272, 371 P.3d 322, 326 (2016)). "Unjust enrichment is an equitable remedy." *Stevenson v. Windermere Real Est./Cap. Grp*., *Inc.,* 152 Idaho 824, 829, 275 P.3d 839, 844 (2012) (emphasis omitted). "This Court reviews rulings on equitable remedies for an abuse of discretion." *Asher v. McMillan*, 169 Idaho 701, 705, 503 P.3d 172, 176 (2021) (quoting *Wadsworth Reese*, 165 Idaho at 372, 445 P.3d at 1098).

Sanchez's argument fails for three reasons. First, Sanchez's argument, again, "simply invites us to reweigh the evidence" presented to the district court, "which we will not do." *Gestner v. Divine*, 171 Idaho 159, 168, 519 P.3d 439, 448 (2022). While Sanchez contends that the district court did not address the $900 monthly payment she made to the Pickerings, the district court determined that Sanchez was not entitled to any equity payments to compensate her for the rent payments she made while she occupied the property. Furthermore, Sanchez cannot establish that she conferred any benefit on the Pickerings based on the increase in value of the residence during the time Sanchez lived there. Given the senseless and vindictive damage she did to the property, if the property increased in value, it was *despite* her best efforts.

Second, Sanchez did not contend that the district court abused its discretion under any prong of the *Lunneborg* test, and "[f]ailing to demonstrate that an abuse of discretion occurred under any part of the test . . . is fatal to [an] argument that the [trial] court abused its discretion." *Smith v. Smith*, 167 Idaho 568, 584, 473 P.3d 837, 853 (2020) (all but first alteration in original) (citation omitted).

And finally, Sanchez's failure to challenge the district court's finding that she had "the uncleanest of unclean hands" is also fatal because it is an alternative basis to uphold the district court's ruling. *See Schweitzer Basin Water Co. v. Schweitzer Fire Dist.*, 163 Idaho 186, 194 n.4, 408 P.3d 1258, 1266–67 n.4 (2017) ("Where a lower court makes a ruling based on two alternative grounds and only one of those grounds is challenged on appeal, the appellate court must affirm on the uncontested basis." (citation omitted)). The clean hands doctrine provides that "a litigant may be denied relief by a court of equity on the ground that his conduct has been inequitable, unfair and dishonest, or fraudulent and deceitful as to the controversy in issue." *Jordan v. Walmart Assocs., Inc*., ___ Idaho ___, ___, 539 P.3d 593, 603 (2023) (quoting *Kirkman v. Stoker*, 134 Idaho 541, 544, 6 P.3d 397, 400 (2000)). "The clean hands doctrine is a principle of equity invoked to promote public policy and protect the integrity of the courts." *Id*. (citing *Gilbert v. Nampa Sch. Dist. No. 131*, 104 Idaho 137, 145, 657 P.2d 1, 9 (1983)). Under this doctrine, "[a court] has the

14

discretion to evaluate the relative conduct of both parties and to determine whether the party seeking equitable relief should in the light of all the circumstances be precluded from such relief." *Schmidt v. Huston*, 167 Idaho 320, 324, 470 P.3d 1129, 1133 (2016) (quoting *Thomas v. Med. Ctr. Physicians, P.A.*, 138 Idaho 200, 209, 61 P.3d 557, 566 (2002)).

Although the district court determined that Sanchez had unclean hands, it explained that it did not "have any impact on the outcome because the court has already made findings and conclusions on all of the relevant issues . . . ." While recognizing that it would be within the outer bounds of its discretion to bar Sanchez from *any* equitable relief based on her conduct, the district court determined denying Sanchez the $10,000 downpayment "would be too harsh" and "unfair." Because this finding forms an independent basis to affirm the district court's judgment declining to award Sanchez additional amounts for equity payments, Sanchez's failure to challenge the district court's finding is also fatal.

For these reasons, we affirm the decision of the district court.

**D. The Pickerings are entitled to an award of attorney fees.**

Sanchez requests an award of costs and attorney fees on appeal under Idaho Code section 48-608(5), a provision of the ICPA. As Sanchez did not prevail on that claim, she is not entitled to such an award.

The Pickerings also request an award of attorney fees pursuant to Idaho Code section 12-121. Fees are warranted under that provision if the appeal, or any part of it, was brought frivolously, unreasonably, or without foundation. *Kelly v. Kelly*, 171 Idaho 27, 49, 518 P.3d 326, 348 (2022). "When awarding fees under section 12-121, '[a]pportionment of attorney fees is appropriate for those elements of the case that were frivolous, unreasonable, and without foundation.' " *Id.* (alteration in original) (quoting *Baughman v. Wells Fargo Bank, N.A.*, 162 Idaho 174, 183, 395 P.3d 393, 402 (2017)). Sanchez appealed the collateral source issue without providing an adequate record to allow us to review the district court's decision. As such, we award attorney fees for the Pickerings having to respond to that issue. Attorney fees will be apportioned for the time spent responding to that issue only. The remaining claims were not brought unreasonably or without foundation and so attorney fees will not be awarded for those. The Pickerings are the prevailing party on appeal and are entitled to costs pursuant to Idaho Appellate Rule 40(a).

15

## IV.     CONCLUSION

For the reasons set forth above, the judgment of the district court is affirmed. Attorney fees are awarded to the Pickerings for having to respond to the collateral source issue. The Pickerings are entitled to costs on appeal.

Chief Justice BEVAN, Justices MOELLER, ZAHN, and Justice Pro Tem GRATTON CONCUR.