# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 49787

KERRY ANGELOS, an individual, )
)
  Plaintiff, )     Boise, June 2024 Term
)
and )     Opinion filed: August 16, 2024
)
GREG SCHATZEL, as successor in interest to )     Melanie Gagnepain, Clerk
KERRY ANGELOS, an individual, )
)
  Plaintiff, )
)
v. )
)
GREG SCHATZEL and SUSAN SCHATZEL, )
husband and wife; RICHARD J. PINEDA, an )
individual; FRED J. PINEDA, an individual, )
)
  Defendants-Respondents, )
)
and )
)
VIC DEVLAEMICK, an individual; and )
PACIFIC GLOBAL INVESTMENT, INC., )
)
  Real Parties in Interest-Appellants, )
)
and )
)
DOES 1 through 10, inclusive, )
)
  Defendants. )

---

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Patrick J. Miller, District Judge.

The judgment of the district court is <u>affirmed</u>.

Points Law, PLLC, Boise for Appellants. Michelle Points argued.

McCarthy & Holthus, LLP, Boise; Garrett Richardson PLLC, Eagle; and Thomas Schatzel, Esq., Los Gatos, California, for Respondents. David M. Swartley argued.

MOELLER, Justice.

Pacific Global Investment, Inc., and its president, Vic Devlaeminck, appeal the denial of their motion to intervene in a defamation action. They argue on appeal that they have a perfected interest in a defamation lawsuit and priority over the newly-substituted plaintiff's interest; therefore, they should have been permitted to intervene and then substitute as plaintiff to assume prosecution of the lawsuit. For the following reasons, we affirm the district court's decision denying the motion to intervene.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The proceedings that led to this appeal are the latest chapter in a long-running personal feud between Kerry Angelos and Greg and Susan Schatzel. A complete history of that dispute is laid out more fully in a companion case: *Angelos v. Schatzel*, Dkt. No. 49788 (Idaho). It is sufficient for this appeal to know that Angelos, a real estate businessman, brought a defamation action against the Schatzels, a married couple who allegedly created and operated a website that published false and derogatory information about Angelos. However, during the course of the lawsuit, Angelos's interest in the action was auctioned at a sheriff's sale to satisfy a monetary judgment held by a third party. Greg Schatzel, the highest bidder at the auction, purchased Angelos's rights, title and interest in the underlying lawsuit, Case No. CV01-20-07472 (D. Ct. Ada County), for $70,000 on October 28, 2021.

When Greg Schatzel filed a motion to substitute himself as party plaintiff, Pacific Global Investment, Inc., and its president, Vic Devlaeminck (collectively "PGI"), filed a motion to intervene in the lawsuit. PGI is one of Angelos's creditors and owns a promissory note for $350,000. PGI argued that they had "a valid and perfected security interest" in the action and priority over Schatzel to become the party plaintiff. To support their motion to intervene, PGI pointed to a security agreement they entered into with Angelos on October 28, 2020—nearly six months after Angelos filed his complaint—for collateral to secure the earlier promissory note of $350,000. In the security agreement, Angelos granted "a security interest" to PGI in "[a]ll rights, title and interest" he held in the defamation action. PGI also pointed to a UCC-1 financing statement filed by Angelos's counsel on September 7, 2021, with the Idaho Secretary of State, which identified as collateral PGI's secured interest in the rights, title and interest held by Angelos in the defamation action. In its motion before the district court, PGI contended that it should be

2

allowed to intervene and become the party plaintiff in the case to assume prosecution of the causes of action listed in the complaint. Schatzel objected to the motion, arguing that PGI failed to meet the standards for intervention as set forth in Idaho Rule of Civil Procedure 24.

The district court heard oral arguments on all pending motions on January 28, 2022. Relevant here, the district court concluded that Angelos did not assign his complete and present right in the litigation to PGI—rather, PGI's secured interest in the litigation "inherently accepted the risk that Angelos would not prevail in the suit" or receive any damages. However, the district court noted that the failure of the collateral to repay the debt did not impact the enforceability of the promissory note or PGI's entitlement to repayment. Secondly, the district court determined that PGI had failed to meet "its burden to show that its interest in this case [was] not adequately represented by the existing parties to the suit." PGI's motion to intervene was denied, but Schatzel's motion to substitute was granted.

On April 12, 2022, Schatzel—as successor in interest to Angelos—filed a stipulated motion on behalf of himself and the other defendants to dismiss the lawsuit with prejudice. The district court granted the stipulation, dismissed the case with prejudice, and ordered that all parties would bear their respective attorney fees and costs. Both PGI and Angelos timely appealed. Schatzel, as the newly substituted plaintiff in the action, filed a motion before this Court to dismiss the appeals of the non-parties Angelos, Devlaeminck, and PGI. The motion was joined by the other defendants. This Court denied the motion.

## II. STANDARD OF REVIEW

"A district court's decision to grant or deny permissive intervention is a matter of discretion." *Am. Falls Reservoir Dist. No. 2 v. Idaho Dep't of Water Res.*, 143 Idaho 862, 882, 154 P.3d 433, 453 (2007). Thus, we review a trial court's denial of permissive intervention for an abuse of discretion. *See id.* When determining whether the court properly exercised its discretion, we engage in a four-part inquiry:

> Whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason.

*Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018). This Court will not disturb the district court's decision on a motion to intervene short of an abuse of discretion. *See Campbell v. Kildew*, 141 Idaho 640, 645, 115 P.3d 731, 736 (2005).

3

## III. ANALYSIS

**A. The district court did not abuse its discretion in denying PGI's motion to intervene.**

In this appeal, PGI challenges the district court's denial of their motion to intervene under Idaho Rule of Civil Procedure 24(a)(2). They contend that "PGI was entitled to intervene because its right, title and interest in this litigation is superior to that of Schatzel." Importantly, however, this appeal does not address the merits of whether PGI had a perfected security interest or priority over Schatzel to be substituted as the plaintiff in interest. Rather, the district court's decision merely answered a preliminary question, and this appeal reviews the same: whether PGI met its burden for its motion to intervene to be granted?

Rule 24(a)(2) of the Idaho Rules of Civil Procedure directs the court to permit an intervenor who:

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

In support of their motion under Rule 24(a)(2), PGI submitted the promissory note, the UCC-1 financing statement, and the security agreement between PGI and Angelos.

The first requirement of Rule 24(a)(2)—"an interest relating to the property or transaction that is the subject of the action"— is dispositive to the case before us because PGI failed to demonstrate that they possessed such an interest. PGI contends that the security agreement not only granted them an interest in the litigation, but "provided PGI all '**rights**' [Angelos] had in the litigation/property," including his rights as a party plaintiff. However, the district court determined that while PGI "may have an interest in Angelos' anticipated proceeds," PGI had failed to enforce their interest in the lawsuit by divesting Angelos of his interest in the collateral and taking ownership pursuant to Article 9 of the Uniform Commercial Code ("UCC"). (Emphasis in original). The court concluded that "Angelos did not transfer his complete and present right in this litigation to PGI such that PGI would be entitled to assume his place as the real party in interest." We agree with this conclusion and likewise determine that PGI lacked a present right in the lawsuit.

We have always interpreted the right to intervene to require "an interest in the matter in litigation . . . ." *See Herzog v. City of Pocatello*, 82 Idaho 505, 509, 356 P.2d 54, 56 (1960) (quoting I.C. § 5-322 (repealed 1975); and citing I.R.C.P. 24(b) (1960)). That "interest . . . which entitle[s] a person to intervene in a suit between other parties must be in the matter in litigation, and of such

4

a direct and immediate character that the intervener will either gain or lose by the direct legal operation and effect of the judgment." *Id.* (quoting *People ex rel. Glidden v. Green*, 1 Idaho 235, 240 (1869); and citing *Pittock v. Buck*, 15 Idaho 47, 54, 96 P. 212, 214 (1908)). The first question that must be answered by a party seeking to intervene as a matter of right is whether the intervenor "claims an interest relating to the property or transaction that is the subject of the action . . . ." I.R.C.P. 24(a)(2).

Here, PGI's argument that they have an interest in the lawsuit is based on their contention that the chose in action is property and that Angelos somehow *transferred* that property to it through the security agreement, giving PGI "[a]ll rights, title and interest" in his chose in action. We have long recognized that the "right to sue for an injury is a right of action—it is a thing in action, and is property." *Muir v. City of Pocatello*, 36 Idaho 532, 540, 212 P. 345, 347 (1922) (quoting *Chicago, Burlington & Quincy R.R. Co. v. Dunn*, 52 Ill. 260, 264 (1869)). However, there is a difference between an *assignment of interest* in a claim and *holding a security interest* in it. "[A]n assignment is a transfer of all of one's interest in property." *Haag v. Pollack*, 122 Idaho 605, 610, 836 P.2d 551, 556 (Ct. App. 1992) (citing 6 Am. Jur. 2d Assignments § 1, at 185 (1963)). Whereas, "a party who holds only a security interest becomes the 'owner' of the goods *upon the debtor's default* because the default gives the secured party the right of possession superior to that of the purchaser." *State v. Henninger*, 130 Idaho 638, 641, 945 P.2d 864, 867 (Ct. App. 1997) (emphasis added). *See also* I.C. § 28-9-607(a)(3) (a security interest designates that specified collateral will be transferred to secure a debt, in the event of a default). Title 28 of the Idaho Code defines "security interest" as "an interest in personal property or fixtures which secures payment or performance of an obligation." I.C. § 28-1-201(b)(35). This "includes any interest of a consignor and a buyer of accounts, chattel paper, a payment intangible, or a promissory note in a transaction that is subject to chapter 9, title 28, Idaho Code." *Id.*

The security agreement between PGI and Angelos stated: "Debtor [Angelos] grants to Secured Party [PGI] a security interest in the property described in paragraph 3 to secure payment of Debtor's obligation to Secured Party, described in paragraph 4." The property in which PGI was granted a security interest consisted of "[a]ll rights, title and interest held by Kerry Angelos, an individual," in the defamation lawsuit, as well as "[a]ll furniture, fixtures and equipment held by Kerry Angelos, individual." This collateral secured Angelos's obligation to pay PGI "the sum of $350,000.00, together with accumulated interest, on or before October 15, 2021 or as soon

5

thereafter as is possible until balance is paid in full." If default occurred, the security agreement granted PGI the right to require Angelos to "make the Collateral available to [PGI]" so that it could "*take possession*" of it. (Emphasis added). Pursuant to the plain language of this security agreement, PGI's rights were contingent upon Angelos's default and PGI's taking possession of the lawsuit as collateral.

This same principle set forth in the security agreement operates under Article 9 of the Uniform Commercial Code ("UCC"), with an assignment of rights generally contingent on the debtor's default. U.C.C. § 9-601 (Am. Law Inst. & Unif. Law Comm'n) ("*After default*, a secured party has the rights provided in this part and, except as otherwise provided in Section 9-602, those provided by agreement of the parties.") (emphasis added). Idaho's version of the U.C.C. echoes these rules:

> *[A]fter default*, a secured party:
>
> . . . .
>
> (3) May enforce the obligations of an account debtor or other person obligated on collateral and exercise the rights of the debtor with respect to the obligation of the account debtor or other person obligated on collateral to make payment or otherwise render performance to the debtor, and with respect to any property that secures the obligations of the account debtor or other person obligated on the collateral[.]

I.C. § 28-9-607(a)(3) (emphasis added).

Accordingly, we do not agree with PGI that the security agreement automatically transferred Angelos's rights in the action at the time of its creation, including his rights to become a party plaintiff. To accept that argument would mean that Angelos not only assigned his rights in the chose in action upon signing the agreement, but also the rights to his furniture and equipment. Yet the provisions of the security agreement—as well as Article 9 of the UCC—mandate that assignment of the rights to the action was contingent on Angelos's default.

Counsel for PGI claimed for the first time at oral argument that default "was a given" and the only possible explanation for its motion to intervene; yet the record on appeal contains no evidence that default occurred. This oversight is fatal to PGI's appeal. Appellants have a particular duty to provide a clear record for proper and sufficient review of a district court's decision. *Pickering v. Sanchez*, 173 Idaho 404, ____, 544 P.3d 135, 145 (2024). If an appellant fails to comply with this duty, we "will presume that the absent portion supports the findings of the [trial]

court." *Id.* (alteration in original) (quoting *Est. of Ekic v. Geico Indem. Co.*, 163 Idaho 895, 898, 422 P.3d 1101, 1104 (2018)).

Despite our conclusion in this regard, our opinion today should not be read to say that PGI's security agreement could never become an interest that would warrant intervention. Had PGI established that Angelos was in default, and that it was enforcing its rights pursuant to the agreement, this might be a very different case with PGI standing to "either gain or lose by the direct legal operation and effect of the judgment'." *Herzog*, 82 Idaho at 509, 356 P.2d at 56 (first quoting *Green*, 1 Idaho at 240; and then quoting *Pittock*, 15 Idaho at 54, 96 P. at 214). There was no question that Schatzel, as the new plaintiff, intended to dismiss the case against himself with prejudice. The problem here is that PGI lacked a *present* right to intervene. The security agreement only permitted PGI to "take possession" of "[a]ll rights, title and interest held by Kerry Angelos" upon his default—certainly not before default and not without it.

The district court correctly determined that "Angelos did not transfer his complete and present right in this litigation to PGI such that PGI would be entitled to assume his place as the real party in interest." Having failed to establish a present interest in the litigation, we conclude that PGI's motion to intervene was properly denied. The district court perceived the issue as one of discretion, acted within the outer boundaries of its discretion, acted consistently with the applicable legal standards, and reached its decision through the exercise of reason. *Lunneborg*, 163 Idaho at 863, 421 P.3d at 194. Therefore, finding no abuse of discretion, we affirm the decision of the district court.

Because this conclusion is dispositive of the case before us, we need not address PGI's contentions regarding the remaining prongs of Rule 24(a)(2).

**B. Neither party is entitled to attorney fees on appeal.**

Both parties request attorney fees on appeal. PGI requests attorney fees under Idaho Code section 12-120(3), which "compels an award of attorney fees to the prevailing party in an action to recover on a commercial transaction." *Troupis v. Summer*, 148 Idaho 77, 81, 218 P.3d 1138, 1142 (2009). However, PGI is not a prevailing party; thus, is not entitled to attorney fees on appeal.

Schatzel has prevailed and requests attorney fees pursuant to Idaho Code section 12-120(1). This statute requires a mandatory award of attorney fees to the prevailing party in personal injury actions "where the amount pleaded is thirty-five thousand dollars ($35,000) or less . . . ." I.C. § 12-120(1). "This section is interpreted literally by the courts." *Lawrence v. Hutchinson*, 146 Idaho

7

892, 901, 204 P.3d 532, 541 (Ct. App. 2009). "The pleadings must precisely comply with the statutory mandate and formally plead an amount of [$35,000] or less." *Id.* We have "narrowly construed the application of I.C. § 12-120(1) to cases where it is *clear* that the amount pleaded does not exceed [$35,000]." *Chavez v. Barrus*, 146 Idaho 212, 224, 192 P.3d 1036, 1048 (2008) (emphasis in original).

Here, the pleadings specified that the amount of damages would be "determined at trial *but in excess of* $25,000." (Emphasis added). Although Angelos sought damages exceeding $25,000 in the underlying action, his pleadings did not foreclose the possibility of a judgment in excess of $35,000. Thus, while Schatzel has prevailed in this appeal, it is not clear that the amount pleaded in the original action was less than $35,000. *Id.*; I.C. § 12-120(1). Accordingly, Schatzel is not entitled to attorney fees on appeal under section 12-120(1). However, as the prevailing party, Schatzel is entitled to costs as a matter of right under Idaho Appellate Rule 40(a).

## IV. CONCLUSION

For the foregoing reasons, we affirm the decision of the district court. We award costs to Schatzel on appeal.

Chief Justice BEVAN, Justices BRODY, ZAHN and MEYER CONCUR.